IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| LEONARD BONELLI, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 07-48 |
| | : | |
| UNITED STATES OF AMERICA | : | |
| (U.S. POSTAL SERVICE) | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                         **November 3, 2009**

Defendant United States of America, United States Postal Service, moves for summary judgment on the negligence claims of Plaintiff Leonard Bonelli, Jr., who sues for personal injuries allegedly resulting from his slip and fall on a post office floor. Because there is insufficient evidence to show there was a dangerous condition on the floor, and no evidence the United States had any actual or constructive notice of a dangerous condition before Mr. Bonelli fell, the Court will grant summary judgment in favor of the Postal Service, and against Bonelli.

**FACTS**

On Monday, June 27, 2005, at approximately 10:30 a.m., Bonelli checked his post office box at the Aubrey C. Ottley Post Office in St. Thomas, United States Virgin Islands. He then stood in the customer service line to pick up a package, but when his cell phone rang, he stepped out to answer the call. His package number was announced. As he was walking in the customer lobby, he slipped and fell.

Bonelli alleges he suddenly and abruptly slipped due to a substance on the floor. Bonelli testified his feet slipped out from underneath him, causing him to fall backwards, flat on his back, with great impact against the tiled concrete floor. Bonelli testified he felt his "shoe just slipping on

1

the surface and my foot just went from under me . . . ." Bonelli Dep. 45:11-13, June 4, 2008. Bonelli was wearing rubber-soled boat shoes.

Bonelli asserts he "felt and observed the spot where he slipped was clearly slippery as a result of some polish/wax tile cleaner." Pl.'s Br. at 3, 8. Bonelli testified he did not feel or observe anything on the floor and he did not know what caused him to fall, but he inferred it was something "slippery":

> And as I told you, it wasn't no water. It wasn't a rock. It wasn't paper. It wasn't a banana peel.
> So the only thing could have make me slip is it had to had some kind of slippery surface. I don't know whether it's from how - the chemical that they use for cleaning. I don't know if it come from the improper mixing of the chemical.
> I don't know if it was the whole floor, but I know that the part that I was walking on and so forth had something slippery that make my two foot went from under me, sir.

Bonelli Dep. 176:5-14, June 4, 2008. Bonelli never testified he knew what substance allegedly caused him to fall. He testified he did not see or smell anything at the time he fell. Bonelli admits he only "surmises" the spot where he fell was slippery due to the Postal Services's use of floor "polish/wax tile cleaner." Pl.'s Ltr. Br. at 1, June 15, 2009.

Bonelli alleges on Sunday, the day before he fell, custodial workers polished and buffed the floors with a pine-oil cleaner in preparation for Monday's opening. In support of this assertion, Bonelli relies on the testimony of Carol Tumma, an independent contractor who cleaned the floor at the Ottley Post Office, and Postmaster of the Ottley Post Office, Robert Allen. Ms. Tumma had no personal knowledge about the floor being buffed and polished the weekend before Bonelli fell. Tumma routinely mopped the floor, using a capful of pine-oil cleaner to a bucket of water, but she was never asked to buff or polish the floor. She only surmised the floor was buffed or polished on Sundays, testifying "Yes, I would figure that because then you wouldn't have no time to do that

2

unless you do it on a Sunday." Tumma Dep. 32:10-14, Feb. 1, 2008.  She was in Florida the last weekend in June 2005 and did not return to St. Thomas until after Bonelli fell.  She testified she did not know if any liquid was ever used to buff or polish the floor.

Postmaster Allen testified the floor is cleaned daily with a damp mop using pine-oil cleaner, but he had no personal knowledge about the floor being buffed or polished the day before Bonelli fell or any other day.  Allen testified the floor is routinely cleaned on the weekend only on Saturdays because "[t]he retail lobby area where he fell is not open" on Sundays.  Allen Dep. 20:10-24, June 4, 2008.

It is undisputed no water or foreign substance was visible on the floor before or after Bonelli fell.  Bonelli testified he saw nothing on the floor before he fell.  All witnesses who were deposed, including Postmaster Allen, Ms. Monique Freeman, the Postal Service window clerk on duty when Bonelli fell, Freeman's supervisor, Ms. Yvette Blash, and Mr. Kenneth Howard, the custodian on duty that day, testified they did not see anything on the floor where Bonelli fell.

Bonelli testified the floor where he fell just "looked like the tile, just the regular tile." Bonelli Dep. 42:12-13, June 4, 2008.  Bonelli admitted the floor looked "more or less" as depicted in one of the photographs of the floor taken just after he fell.  Bonelli Dep. 97:9-13; Def.'s Ex. E, photographs D-F.  It is undisputed the photographs show no visible substance or dangerous condition on the floor.  Bonelli admits the customer lobby was well-lit in the area where he fell and it did not rain on June 27, 2005.

On June 27, 2005, the Ottley Post Office had been open to customers for three hours before Bonelli fell, and no one else had slipped or fallen in the lobby.  Freeman testified Bonelli's fall was the first she ever saw in the eight years she had worked there as a window clerk.  Freeman testified

3

she did not see any other customers have trouble with the floor before Bonelli fell.

Freeman testified she was about six feet away from the spot where Bonelli fell, but she only "saw him in the process of falling just as he hit the ground." Freeman Dep. 19:2-3, 20:3-12, Sept. 4, 2008. The only other eyewitnesses to Bonelli's fall were Mr. Tunka Sprauve and Ms. Cherrie Wheatley, two Ottley Post Office customers who were not deposed. By affidavit, Sprauve declared he did "not know what caused Mr. Bonelli to fall" and he "did not look at the floor to see if there was anything on the ground that caused Mr. Bonelli's fall." Def.'s Ltr. Br. at 3, Ex. 3 at ¶ 5, June 30, 2009. By affidavit, Wheatley declared she did "not know what caused Mr. Bonelli to fall" and she was "too far away to see if anything was on the floor." Def.'s Ltr. Br. at 3, Ex. 4 at ¶ 4, June 30, 2009. She also stated "the entire lobby floor was glossy with a shine but I could not tell if it was wet." Def.'s Ltr. Br. at 3, Ex. 4 at ¶ 5, June 30, 2009.

Postmaster Allen arrived on the scene shortly after Bonelli fell. Allen inspected the floor but did not find anything. Allen slid his own dress shoes over and rubbed his hands on the floor where Bonelli fell, but Allen did not find the floor was slippery. Allen and other Ottley Postal Service employees took photographs of the floor and Bonelli's shoes. It is undisputed the photographs do not show any evidence of a substance or dangerous condition on the floor. It is also undisputed the photographs of the soles of Bonelli's shoes do not show any residue from a foreign substance.

Shortly after Bonelli fell, Ottley Postal Service employees filled out a U.S. Postal Service Form 1700, Accident Investigation Worksheet, and Form 1769, Accident Report. Both documents reflect there was no dangerous condition on the floor. The Worksheet states "the floor was in good condition" and "the floor was clean. No waxing. No trip[p]ing devices." Def.'s Br., Ex. A. The Report states "the floor where Mr. Bonelli fell was inspected by the Postmaster and the custodian.

4

There was no noticeable irregularity on the floor. The floor was not wet. The floor was not slippery." Def.'s Br., Ex. A. During Bonelli's conversations with Postal Service employees on June 27, 2005, he never stated or indicated there was a substance or dangerous condition on the floor.

**DISCUSSION**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate where the "nonmoving party has failed to make a sufficient showing on an essential element of her case, with respect to which she had the burden of proof." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). As the Third Circuit has recognized, "the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way." *Saldana v. Kmart Corp.*, 260 F.3d 228, 234 (3d Cir. 2001).

The Postal Service, as the party moving for summary judgment, has met its initial burden by showing a complete absence of relevant evidence to support Bonelli's negligence claims. *See Celotex*, 477 U.S. at 325 (stating the moving party's initial burden is met by "pointing out to the . . . court that there is an absence of evidence to support the non-moving party's case"). Bonelli, as the non-moving party, has failed to meet his burden of "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Bonelli offers no material facts which might prove negligence under the governing law and provides no evidence showing a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5

As a business owner of its post offices, the Postal Service owes a duty to its customers.[1] The Postal Service must "maintain [the] premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended." *Morris v. Gimbel Bros., Inc.*, 394 F.2d 143, 145 (3d Cir. 1968). Bonelli was an invitee at the Ottley Post Office at the time of his fall. *See* Restatement (Second) of Torts § 332 (defining an invitee as "a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public").[2] A landowner is liable to an invitee for dangerous conditions, which cause the invitee physical harm as follows:

> § 343. DANGEROUS CONDITIONS KNOWN TO OR DISCOVERABLE BY POSSESSOR
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343. Therefore, Bonelli must prove there was a dangerous

---

[1] *See also Verge v. U. S. Postal Serv.*, 965 F. Supp. 112, 117 (D. Mass. 1996) (ruling under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-2680, where the plaintiff sued for injuries from a slip and fall at a post office, the federal government is liable in the same manner and to the same extent as a private individual under like circumstances). Furthermore, it is the law of the place where the act or omission took place which must be applied. *Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978). In this case, Virgin Islands law governs.

[2] The Court applies the law of the Virgin Islands to Bonelli's negligence claims. *Williams v. United Corp.*, No. 2007-118, 2008 WL 2714211 at *3 n.3 (V.I. July 10, 2008) (noting "[i]n the absence of contrary local law, the Restatement is considered binding law in the Virgin Islands, pursuant to title 1, section 4 of the Virgin Islands Code").

condition on the floor at the Ottley Post Office, and the Postal Service had notice of it before he fell.

There is insufficient evidence there was a dangerous condition on the floor before or after Bonelli's fall. Bonelli offers only his own subjective statement he felt the floor was slippery. He offers only his own speculation on causation, surmising he fell as a result of floor polish or wax tile-cleaner having been used on the floor. He argues there must have been a dangerous condition on the floor, otherwise his rubber-soled boat shoes would not have slipped and he would not have fallen so hard, flat on his back on the floor. Other than the quality of his shoes, and the manner and impact of his fall, he offers no other testimony or evidence besides his own subjective statements and speculation. A careful review of the record discloses no evidence whatsoever to support a finding there was a dangerous condition on the Ottley Post Office floor. The record is insufficient for a reasonable jury to return a verdict in his favor.

Bonelli claims the manner of his fall in itself is evidence the floor was slippery and unreasonably dangerous. He offers only his own testimony of how he fell. His fall alone, no matter how he fell, is not evidence of a dangerous condition from which an inference of the Postal Service's negligence can be drawn. *See Stephens v. Sears Roebuck & Co.*, 212 F.2d 260, 261 (7th Cir. 1954) (holding mere fact of a plaintiff's fall does not prove there was a dangerous condition or support an inference the defendant store was negligent); *Bowser v. J. C. Penney Co.*, 46 A.2d 324, 325-26 (Pa. 1946) (holding evidence of plaintiff's slip on a spot of wax on a store floor does not alone prove the store improperly applied the wax). Even accepting Bonelli's testimony as true, his statements do not raise a genuine, triable issue of material fact for a jury to resolve about the dangerousness of the floor or the Postal Service's alleged negligence in maintaining its floor.

Bonelli offers only his own subjective evaluation about the condition of the floor as being

7

"slippery." Bonelli Dep. 42:6. His statements are insufficient to prove there was a dangerous condition, as *Stephens* recognized:

> The testimony of plaintiffs' witnesses that the floor was 'slick,' 'shiny' or 'slippery' fails to definitely show a dangerous condition. These words of description are lacking in precision of meaning. What is 'slippery' to one person might not be 'slippery' to others. The same characteristic applies to 'shiny' and 'slick.'

212 F.2d at 261. *See also Dixon v. Hart*, 101 N.E.2d 282, 285 (Ill. App. Ct. 1951) (holding plaintiff's subjective characterization of the floor as "slippery" was insufficient to warrant a trial); *Lucker v. Arlington Park Race Track Corp.*, 492 N.E. 2d 536, 102 (Ill. App. Ct. 1986) (stating testimony about a floor being slick, slippery, or polished is insufficient to establish negligence because it does not give the trier of fact a basis for balancing the defendant's conduct against the requisite standard of care). Bonelli's subjective characterization of the floor does not raise a genuine, triable issue of material fact for a jury to resolve about the dangerousness of the floor or the Postal Service's alleged negligence in maintaining its floor.

Bonelli surmises the Postal Service buffed and polished the floor with pine-oil cleaner the day before he fell, and this caused his fall. Even assuming his guess is true, which the record does not support, the Postal Service's use of pine-oil cleaner to clean, buff, or polish the floor is not evidence the Postal Service was negligent. *See Stephens*, 212 F.2d at 261 (stating "waxing a floor is not negligence per se"); *Bowser*, 46 A.2d at 325 (noting "it is not negligence per se on the part of an owner to wax or oil his floors"); *Dixon*, 101 N.E.2d at 284 (stating "the mere treating of a floor with a substance that gives it a polished surface is not negligence *per se*"). Bonelli provides no proof of a negligent act or omission by the Postal Service.

The only record evidence indicating a dangerous condition might have been present on the

8

Ottley Post Office floor on June 27, 2005, is Bonelli's subjective, verbal characterization of the floor as "slippery," which is insufficient as a matter of law to show the floor was dangerous. Moreover, it is undisputed no one else fell or had any problems with the Ottley Post Office floor on June 27, 2005. *See Cannon v. Great Atl. & Pac. Tea Co.*, 146 So.2d 804, 806, 809 (La. Ct. App. 1962) (holding evidence showing no one other than plaintiff had slipped on the floor before the accident was sufficient to support a finding the floor was not as slippery as plaintiff contended and an inference the defendant store maintained its floor in a reasonably safe condition for customers); *Oliver v. Am. Republic Fin. Corp. of Biloxi*, 152 So.2d 705, 706 (Miss. 1963) (holding evidence many persons walked without mishap on the floor, on the day plaintiff fell, barred recovery). A jury could only speculate whether the floor, as subjectively characterized by Bonelli, caused him to fall.

Even assuming there was a dangerous condition on the floor of the Ottley Post Office on June 27, 2005, which the record does not support, Bonelli provides no proof the Postal Service had any notice there was a problem with its floor. The parties do not dispute the record is devoid of any evidence Postal Service agents or employees had actual notice of a dangerous condition before Bonelli fell.[3] Because Bonelli offers no evidence of actual notice, Bonelli must prove constructive notice of a dangerous condition on the floor before his fall. Bonelli fails to do this.

Constructive notice is shown by "demonstrating that the floor condition had existed for such a length of time that the [landowner], in the exercise of ordinary care, should have been aware of the

---

[3] It is undisputed no water or foreign substance was visible on the floor before or after Bonelli fell. All witnesses who were deposed, including Bonelli, testified they did not see anything on the floor where Bonelli fell. Bonelli admitted the floor looked "more or less" as depicted in one of the photographs taken just before he fell. It is undisputed the photograph shows no visible substance or dangerous condition on the floor. There is no evidence any other person encountered a dangerous condition on the floor and notified the Postal Service before Bonelli fell.

condition." *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 236 (3d Cir. 1984). *See also Williams v. United Corp.*, No. 2007-118, 2008 WL 2714211 at *3 (V.I. July 10, 2008) (ruling invitee must prove a substance was on the floor long enough to give the supermarket constructive notice of its presence, which would provide the supermarket with an opportunity to discover the danger and take steps to remedy it); *Saldana*, 260 F.3d at 232 (affirming summary judgment where there was a complete lack of evidence as to how long the wax was on the floor).

Even assuming a dangerously slippery condition existed on the Ottely Post Office floor, Bonelli offers no testimony or other evidence about the length of time the floor was allegedly slippery. Bonelli provides no evidence the Postal Service knew or should have known of a dangerous condition and failed to take reasonable steps to correct it. A fact-finder could only speculate about whether the floor was slippery, and whether the Postal Service should have discovered and corrected the problem.

Bonelli argues he need not prove actual or constructive notice because the United States created a dangerously slippery condition by using pine-oil cleaner to buff and polish the floor. He relies on *Larkin v. Superfresh Food Markets, Inc.*, 291 Fed. Appx. 483, 484-85 (3d Cir. 2008) (noting a business invitee must prove the proprietor had a hand in creating the harmful condition or had actual or constructive notice of such condition). Bonelli never proves the Postal Service buffed and polished the floors with pine-oil cleaner. Neither Tumma nor Allen testified pine-oil cleaner was used to buff and polish the floor. There is no evidence the Postal Service created any dangerous condition on its floor at any time.

Because there is no evidence showing the Postal Service breached its duty of care to Bonelli, summary judgment is appropriate. Nonetheless, Bonelli asks the Court to impose an adverse

evidentiary inference against the Postal Service, based on its destruction of a videotape of the Ottley Post Office customer lobby taken on June 27, 2005.[4] Bonelli contends destruction of the videotape warrants the inference the videotape would have shown the Postal Service was negligent, thereby defeating summary judgment. Bonelli is mistaken.

The Third Circuit has explained when such an adverse evidentiary inference based on the loss or destruction of documents is appropriate:

> When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him.

*Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983)). No unfavorable inference arises when the circumstances indicate the document has been lost or accidentally destroyed. *Brewer*, 72 F.3d at 334; *Gumbs*, 718 F.2d at 96. An unfavorable inference arises only where the destruction or "spoliation" of evidence was "intentional, and indicates fraud and desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *Gumbs*, 718 F.2d at 96.

Bonelli is not entitled to the adverse inference he seeks because he has produced no evidence whatsoever of the Postal Service's fraud, or intention to suppress or withhold the videotape. Moreover, it is unlikely the videotape would have provided any probative evidence favorable to Bonelli in proving the essential elements of his negligence case. The videotape likely would have

---

[4] Bonelli conducted discovery and deposed witnesses about the destruction of the videotape, which confirmed the videotape was destroyed by criminal investigators of the United States Postal Inspection Service (USPIS) as a matter of routine practice.

shown other persons moving on the lobby floor without mishap. Even if the videotape had recorded Bonelli's fall, his fall alone is not evidence of the Postal Service's negligence. The videotape likely would have disclosed nothing more than the eyewitnesses, the photographs, and Bonelli himself have already disclosed.

On the record before the Court, Bonelli cannot defeat summary judgment by raising mere possibilities of proof based on the destroyed videotape. The complete absence of any relevant evidence on the essential elements of Bonelli's negligence case compels summary judgment in favor of the Postal Service.

An appropriate order follows.